United States District Court
Southern District of Texas
**ENTERED**
March 30, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Jeffrey Williams, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action H-19-5053 |
| | § | |
| United States Department of Education, | § | |
| Defendant. | § | |

## ORDER ON MOTION TO DISMISS

Jeffrey Williams filed suit against the United States Department of Education[1] under the Federal Tort Claims Act. Williams asserts that Defendant failed to comply with governing regulations and a Department of Education procedure manual in its adjudication of a discrimination complaint he filed. The parties consented to the jurisdiction of the magistrate judge, and the district judge transferred the case to the undersigned for all further proceedings, including entry of final judgment. (D.E. 14, 15.) Pending before the court is Defendant's motion to dismiss based on lack of subject matter jurisdiction. (D.E. 22.) The motion is GRANTED.

---

[1] To the extent that Williams's claims are brought against this federal agency, the court lacks subject matter jurisdiction over his claims. However, the United States has been defending the suit in the name of the United States as if it were the substituted party under 28 U.S.C. § 2679(d)(1). Williams has approached this lawsuit as one against the United States under the Federal Torts Claims Act. Prior to the court's entry of final judgment, the court will substitute the United States as the proper party. Objections to the substitution must be filed no later than April 6, 2021.

## 1. Background and Procedural Posture

This litigation stems from the investigation of a civil rights complaint. (D.E. 21 ¶ 60.) Williams alleges that in 2009 he was unlawfully dismissed from a post-graduate program in violation of Title IX of the Education Amendments of 1972 (Title IX) and the Age Discrimination Act of 1975 (Age Discrimination Act). *Id.* ¶ 1. According to Williams, he was one of four students placed on academic probation in December 2008 but was the only student who was ultimately dismissed from the program in August 2009. *Id.* ¶¶ 26, 31.

Williams filed a complaint against the school with the Department of Education's Office for Civil Rights (OCR) asserting that he was treated differently from similarly situated female students. (D.E. 21 ¶ 60.) He filed administrative complaints against OCR alleging that OCR improperly adjudicated his complaint against the school. *Id.* ¶¶ 81, 95. He also filed an earlier federal lawsuit that he dismissed. *Id.* ¶ 84. A timeline of relevant events is helpful.

- September 2009—Williams filed his discrimination complaint against the school with OCR. (D.E. 21 ¶ 60.)
- April 15, 2010—OCR issued a determination letter informing Williams it found insufficient evidence of discrimination against him. (D.E. 21 ¶ 67; D.E. 26-2.)
- September 2010—Williams appealed the findings detailed in OCR's April 2010 determination letter. (D.E. 21 ¶ 72.)
- August 2012—Williams presented his first administrative claim to OCR, seeking adjudication of his September 2010 appeal of OCR's investigative findings and determination. (D.E. 21 ¶ 81; D.E. 23-2.)
- August 31, 2012—OCR denied Williams's first administrative claim. (D.E. 21 ¶ 82; D.E. 23-3.)

- October 2012—Williams filed a complaint against the United States Department of Education in the United States District Court for the District of Massachusetts. (D.E. 21 ¶¶ 84–85; D.E. 23-4.)
- February 27, 2013—OCR issued a denial letter, which denied Williams's September 2010 appeal of OCR's investigative findings and determination. (D.E. 21 ¶¶ 88, 92–93; D.E. 23-5 at 7.)
- May 24, 2013—The District of Massachusetts granted Williams's motion to voluntarily dismiss his federal complaint. (D.E. 23-4.)
- February 18, 2015—Williams presented his second administrative claim to OCR, alleging that OCR employees intentionally violated numerous federal statutes. (D.E. 21 ¶ 95; D.E. 23-5 at 2–4.)
- May 7, 2019—OCR denied Williams's second administrative claim. (D.E. 21 ¶ 97; D.E. 23-6.)
- December 3, 2019—Williams filed this lawsuit in the United States District Court for the Southern District of Texas. (D.E. 1.)

## A. OCR Investigation and Decision

In his September 2009 OCR complaint, Williams alleged that school administrators intentionally altered his school transcript, miscalculated his grades, lied about their own conduct, and failed to follow school policies. (D.E. 21 ¶¶ 59, 61, 63–66.) He provided investigators with evidence that he believes unequivocally established his claims including his own calculations of his grades and "voice excerpts" of conversations he had with school administrators. *Id.* ¶¶ 65–66.

On April 15, 2010, OCR issued a "letter of finding" informing Williams that it completed its investigation of his complaint. (D.E. 21 ¶ 67; D.E. 26-2 at 2–8.) The letter states that OCR interviewed Williams, school representatives, and people that Williams recommended OCR interview "whom [they] were successful in contacting." (D.E. 26-2 at 2.) OCR also reviewed documents submitted by Williams

3

and by the school, including the college's policies and procedures. *Id.* at 3–6. OCR identified potential comparators but determined that they were not similarly situated to Williams because they were at different stages of the program and thus different procedures applied to them under school policy. *Id.* at 6–7. The letter also described OCR's review of statistical information about the school and OCR's determination that it "could not infer a pattern or other indication of different treatment based on sex or age." *Id.* at 7. Following the discussion of the investigation, the letter explained that it "found insufficient evidence" of discrimination under Title IX and the Age Discrimination Act and closed the complaint. *Id.* at 7–8. The letter described how to submit a reconsideration request. *Id.* at 8.

**B. Appeal and First Administrative Complaint**

Before Williams filed for reconsideration of OCR's decision, he requested the agency's internal notations on the investigation under the Freedom of Information Act. (D.E. 21 ¶¶ 68, 71.) Williams received responsive documents. *Id.* ¶¶ 70, 74. In his federal complaint, he describes the response as missing certain documents and containing "documents directly refuting written and oral testimony given by senior college administrators and their legal representatives." *Id.* ¶ 74. Armed with this information, Williams appealed OCR's April 15, 2010 denial of his discrimination claim. *Id.* ¶ 72. According to Williams's federal complaint, his appeal consisted of "more than 200 pages" and identified "more than a dozen analytical errors, plus an

audio recording proving that college senior staff had made numerous prevarications in their sworn testimony." (D.E. 21 ¶¶ 72, 107; D.E. 26 at 19.) Seven months later, Williams contacted OCR to follow up on his appeal. (D.E. 21 ¶¶ 76–77.) An OCR employee told him that the appeal would be read "cover-to-cover" before a decision was made. *Id.* ¶ 76. After two years, Williams filed an administrative complaint seeking prompt adjudication of his September 2010 appeal of OCR's investigative findings and determination. (D.E. 21 ¶ 81; D.E. 23-2.) The administrative complaint was denied. (D.E. 21 ¶ 82; D.E. 23-3.) Six months later, OCR denied Williams's September 2010 appeal of OCR's investigative findings and determination. (D.E. 21 ¶¶ 88, 92–93; D.E. 23-5 at 7.) The letter denying his appeal, signed "Debbie Osgood for Sandra Battle,"[2] states in part:

> After careful consideration of your appeal, I find that OCR Boston's determination to close your case was consistent with the laws and regulations enforced by OCR. Accordingly, your appeal is denied. This concludes OCR's consideration of your appeals and is the final agency determination.

(D.E. 23-5 at 7.)

## C. Second Administrative Complaint

Two years after OCR issued the February 27, 2013 denial of Williams's appeal, on February 18, 2015, Williams filed a second administrative complaint.

---

[2] Sandra Battle was the Deputy Assistant Secretary for Enforcement. (D.E. 23-5 at 7.) A 2010 Department of Education Memorandum attached to the motion to dismiss purports to show this position as one delegated with the proper authority. (D.E. 23-8.)

(D.E. 21 ¶ 95; D.E. 23-5 at 2–4.) In it, he alleged that OCR employees "intentionally falsif[ied] the facts and/or finding of the case" and "unlawfully" closed his appeal in violation of civil and criminal statutes and OCR policy. (D.E. 23-5 at 2–3.) He demanded payment of $2,980,000 in lost wages, the resignation of specific agency employees, and the commencement of a federal criminal investigation into the conduct of the agency employees, employees of his post-graduate program, and their legal counsel. *Id.* at 3.

Four years later, on May 7, 2019, the Department of Education determined that Williams's administrative claims arose "from the Department's exercise of its authority under laws and regulations enforced by [OCR]." (D.E. 21 ¶ 97; D.E. 23-6.) It denied Williams's second administrative complaint based on the discretionary function exception to the Federal Tort Claims Act (FTCA). *Id.*

### D. Federal Lawsuit

Williams filed his federal lawsuit against the Department of Education under the FTCA almost seven months later. (D.E. 1.) In his second amended complaint, Williams asserts that government employees failed to exercise due care while investigating and adjudicating his 2009 discrimination complaint and subsequent appeal of OCR's investigative findings and determination. He argues that their

6

conduct violated sections of OCR's Case Processing Manual (CPM).[3] Specifically,

Williams argues that:

- Under CPM § 110, OCR was not justified in closing his appeal (D.E. 21 ¶¶ 109–10, 117);
- OCR failed to explain the reason his appeal was closed in violation of CPM § 111 (D.E. 21 ¶ 134);
- OCR's denial letter was not signed by the Chief Attorney or their designee in violation of CPM § 111 (D.E. 21 ¶ 109–10, 133);
- OCR denied his right to appeal in violation of CPM § 112 (D.E. 21 ¶¶ 123–25, 139–40);
- OCR's case file failed to contain documentation to support the decision in violation of CPM § 301 (D.E. 21 ¶ 173);
- Under CPM § 306, OCR had no authority to close his appeal (D.E. 21 ¶ 109, 117, 123–25);
- OCR conducted an improper de novo review on appeal in violation of CPM § 306 (D.E. 21 ¶¶ 78–80); and
- OCR used oral testimony in its determination without obtaining written corroboration as required under CPM § 602 (D.E. 21 ¶¶ 100–02, 175).

He characterizes these things as negligence, violations of his constitutional rights, and negligent infliction of emotional distress. Williams seeks money damages based on an alleged loss of income and medical conditions allegedly caused by OCR's conduct. *Id.* ¶¶ 163, 176.

The United States filed its first motion to dismiss in April 2020, for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. (D.E. 8.) In response, Williams amended his complaint. (D.E. 13.) Defendant again filed a motion to dismiss, raising the same arguments as in its first

---

[3] The Case Processing Manual is attached to the United States' motion to dismiss (D.E. 23-7) and is cited herein by paragraph number.

motion. (D.E. 16.) Williams filed his second amended complaint, which is the live pleading before the court. (D.E. 21.) The United States filed its third motion to dismiss. (D.E. 22.) It argues that the court lacks subject matter jurisdiction because: (1) OCR's actions fall within the FTCA's discretionary function exception; (2) Williams's constitutional claims are not cognizable under the FTCA; (3) Williams failed to properly present his claims of negligent infliction of distress to the agency; and (4) the claims are time-barred. (D.E. 23.) The court need not reach all these arguments, because all of Williams's claims are barred by the discretionary function exception to the FTCA, and he has not alleged a constitutional violation sufficient to overcome the exception.

## 2.  Legal Standards for a Rule 12(b)(1) Motion to Dismiss

A court may dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The party asserting jurisdiction has the burden to prove the court's subject matter jurisdiction. *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018).

"A district court may dismiss a case under Rule 12(b)(1) based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in

8

the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020) (citation omitted). Courts may weigh evidence and resolve factual disputes to ensure they have the power to hear the case. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). The court resolves the instant motion based on Williams's second amended complaint, as well as the undisputed factual evidence attached to Defendant's motion to dismiss and Williams's response.

### 3.  Federal Torts Claims Act

"The United States enjoys sovereign immunity from suit, meaning it cannot be sued without consent." *Gonzalez v. United States*, 851 F.3d 538, 543 (5th Cir. 2017). The federal government has consented to a limited waiver of sovereign immunity from tort lawsuits under the FTCA. *Id.* The waiver allows individuals to seek monetary damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The FTCA's waiver of immunity is subject to statutory exceptions outlined in 28 U.S.C. § 2680. "If one of these exceptions applies, a federal court is without subject-matter jurisdiction over the claim." *Cascabel Cattle*

9

*Co. v. United States*, 955 F.3d 445, 450 (5th Cir. 2020) (citing *Campos v. United States*, 888 F.3d 724, 730 (5th Cir. 2018)).

Under the discretionary function exception, the Government is not liable for claims based on an agency's or employee's conduct while carrying out a duty that is discretionary rather than mandatory. 28 U.S.C. § 2680(a). The exception covers actions that are "discretionary in nature" and "involv[e] an element of judgment or choice" on the part of the agency or employee. *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (alteration in original) (quoting *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). "Where Congress has delegated the authority to an independent agency or to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs." *Id.* at 323. If an agency's policy allows officials to act on the basis of policy considerations, the discretionary function exception applies. *Spotts v. United States*, 613 F.3d 559, 568 (5th Cir. 2010) (quoting *Berkovitz*, 486 U.S. at 547).

"A two-prong test determines whether the exception applies: (1) the conduct must be a "matter of choice for the acting employee[;] and (2) the judgment [must be] of the kind that the discretionary function exception was designed to shield."

*Gonzalez*, 851 F.3d at 543–44 (alterations in original) (citations and internal quotation marks omitted). The plaintiff bears the burden of showing that the exception does not apply. *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016).

### A. First Prong: Whether the conduct was a matter of choice

As to the first prong, an employee's conduct is not "a matter of choice" if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Gonzalez*, 851 F.3d at 544 (quoting *Gaubert*, 499 U.S. at 322). "In this event, the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. On the other hand, if the agency is not bound to act in a particular manner and can determine when and how to take action, then its conduct is a "matter of choice." *Gonzalez*, 851 F.3d at 544. The issue here is whether OCR employees were performing discretionary acts when adjudicating Williams's complaint and appeal.

Title IX and the Age Discrimination Act ban federally-funded educational programs from discriminating against program participants based on their gender or age. 20 U.S.C. § 1681(a); 42 U.S.C. § 6101. In 1979, Congress established the Department of Education, in part, to "ensure that education issues receive proper treatment at the Federal level." 20 U.S.C. §§ 3402, 3411. The Department's Office for Civil Rights was created to identify significant civil rights problems and to ensure

compliance with relevant federal laws, such as Title IX and the Age Discrimination Act. 20 U.S.C. § 3413. To achieve its directives, OCR follows the general rules created by the Department of Education and approved by the President. 20 U.S.C. § 1682; 42 U.S.C. § 6103; *see* 34 C.F.R. §§ 106.1, 110.1. Under these rules, an individual who believes that a program has discriminated against them in violation of either statute may file a written complaint with OCR. 34 C.F.R. §§ 100.7(b), 110.31.[4] OCR will promptly investigate, reviewing "the pertinent practices and policies" of the program or institution, the circumstances surrounding the complaint, and any other factors to determine whether a violation occurred. 34 C.F.R. § 100.7(c)–(d); *see* 34 C.F.R. § 110.33. If it is determined that no action is warranted, the department official or their designee must inform the complainant in writing. 34 C.F.R. § 100.7(d)(2).

In accordance with these regulations, OCR created the CPM, which provides "the procedures to promptly and effectively investigate complaints and compliance reviews, issue findings, and to secure resolution agreements that remedy discriminatory policies or practices identified by OCR." (CPM Introduction, D.E. 23-7 at 2.) Williams asserts that the CPM contains mandatory directives that OCR employees are required to follow. Defendant argues that the CPM and relevant

---

[4] The procedural provisions for proceeding under Title VI of the Civil Rights Act of 1964 also apply to provisions under Title IX. 34 C.F.R. § 106.81.

regulations instead dictate that OCR employ its discretion to determine whether the evidence supports a finding of discrimination.

### 1.  The Conduct at Issue

To determine if OCR's conduct was discretionary, the court must first define the conduct. *Gonzalez*, 851 F.3d at 545. Williams alleges that OCR employees failed to follow the CPM (1) during the investigation of his 2009 discrimination complaint and (2) while adjudicating Williams's September 2010 appeal of the investigation's findings and determination. The Fifth Circuit, in *Gonzalez*, instructs that the court must carefully define the conduct at issue. *Gonzalez*, 851 F.3d at 545 (referring to the definition of the conduct at issue as a "gateway" issue; rejecting both parties' framing of the conduct at issue and concluding that the relevant issue was "whether the controlling policies mandated the USFS to inspect and maintain the trails in a specific manner").

Most of Williams's allegations and arguments focus on whether OCR employees followed their own manual. In this sense, he focuses on whether OCR employees abused their discretion and glosses over whether the employees' actions were discretionary. In determining whether the discretionary function exception applies, the court is not concerned with whether the agency or its employee in fact abused its discretion; instead, the concern is whether the regulatory scheme allowed the exercise of discretion in the first place. *Gonzalez*, 851 F.3d at 546–47

13

(contrasting strong evidence that the agency employee breached its duty under the controlling policy with the inquiry under consideration, which asks whether the challenged actions contained an element of judgment).

Before the court addresses the conduct that is at issue, the court must clarify what conduct is not at issue. Central to Williams's argument in response to the motion to dismiss is that his September 2010 appeal of OCR's investigative findings and determination was improperly "administratively closed" and that he was denied his right to appeal the administrative closure. Much of what Williams argues is a red herring, however, and conflicts directly with what he states in his complaint and with the unrebutted evidence submitted for the court's consideration. The court has before it the April 15, 2010 determination letter denying Williams's 2009 discrimination complaint against the school. (D.E. 26-2.) Williams admits to appealing the April 15, 2010 determination in September 2010. (D.E. 21 ¶ 72.) The court further has before it OCR's February 27, 2013 denial of Williams's appeal. (D.E. 23-5.) As will be discussed next, the undisputed evidence shows that there was no administrative closure of either his complaint or his appeal, so any argument that OCR employees were acting under regulations governing administrative closures is not relevant to this case.

The CPM does not clearly define some of the terms at issue, including "administrative closure," "denial," or "appeal." However, the meaning of these

terms is apparent when the manual is read in full. CPM § 101 defines a "complaint" as "a written or electronic statement to the Department alleging that the rights of one or more persons have been violated and requesting that the Department take action." CPM § 101. A complaint may be "dismissed" under CPM § 108 or opened for investigation under CPM § 109. If a complaint is opened for investigation, OCR will issue a letter of notification to the complainant and the educational institution against whom the complaint has been filed, referred to as the "recipient." CPM § 109. Upon completion of the investigation, OCR will issue a "letter of finding" informing the complainant whether OCR found sufficient evidence to support the complaint. CPM § 303. The complainant may appeal the CPM § 303 finding under CPM § 306.

If, during the investigation, OCR determines that a complaint meets specific criteria, for example, that there is a similar complaint already pending or the complaint is foreclosed by federal law or other OCR policy considerations, OCR will "administratively close" the complaint. CPM § 110. In the event of an administrative closure, OCR issues a "letter of administrative closure" explaining the decision. CPM § 111. Under CPM § 112, the complainant may appeal the administrative closure.

Attached to his response to the motion to dismiss, Williams provided the court with OCR's April 15, 2010 determination letter denying his discrimination complaint. (D.E. 26-2.) The subject line of the letter is "Complaint No. 01-09-2073"

15

and states that OCR "completed its investigation of the complaint [Williams] filed." *Id.* at 2. According to the letter, OCR investigated "[w]hether the College treated [Williams] differently than other students based on sex and age in its reinstatement process." *Id.* It includes five explanatory pages detailing the investigation before concluding that "OCR found insufficient evidence to establish that the College violated Title IX or the Age [Discrimination] Act." *Id.* at 3–7. It informs Williams that the "letter is a letter of finding(s)" and that OCR would be closing the complaint. *Id.* at 7–8. Thus, Williams's 2009 discrimination complaint was opened for investigation under CPM § 109, investigated by OCR, and closed with a determination of "insufficient evidence" in accordance with CPM § 303. The complaint was not "dismissed" or "administratively closed." OCR did not act under CPM § 110.

It is also undisputed that in a letter dated February 27, 2013, OCR denied Williams's September 2010 appeal of OCR's denial of his complaint. Thus, OCR was acting on his appeal under CPM § 306. Williams construes the February 27, 2013 denial of his appeal as a "closure" of his complaint. The undisputed evidence demonstrates that it was not a "closure." Because OCR was not acting under CPM § 110, it was not obligated to explain its actions under CPM § 111 or allow an appeal under CPM §112.

This brings the court back to the conduct that is actually at issue in this case. Williams complains that OCR employees negligently, and in violation of his constitutional rights, adjudicated his complaint. He further alleges that OCR employees negligently, and in violation of his constitutional rights, denied his appeal. The court will review each of the relevant sections of the policy manual to determine whether they permit the employee carrying out their duties under the manual to exercise discretion.

### 2.  OCR's Investigation of Williams's 2009 OCR Complaint

Williams alleges that OCR employees negligently adjudicated his complaint. Article III of the CPM is entitled "Investigation of the Complaint." It states that "OCR will ensure that investigations are legally sufficient and that they are dispositive of the allegations raised in the complaint." CPM, Art. III. This sort of generalized, precatory language demonstrates that the CPM does not, in general, seek to direct OCR employees to follow any particularized set of procedures in investigating and adjudicating complaints. *Cf. Gonzalez*, 851 F.3d at 565-46 (concluding that language in a manual directing that agency employees meet certain goals left room for choice based on evaluation of certain factors and was therefore too general to prescribe a certain course for the employees to achieve the stated goals). Article III of the CPM is divided into sections including "Case Planning," § 301, "Investigative Determinations," § 303, and "Appeals," § 306, each of which

forms the basis for Williams's complaints. Article VI, entitled "Appendices" contains a section on "Data Collection and Gathering," § 602, which Williams also relies on.

Williams alleges that the OCR case file did not contain evidence in support of its decision. (D.E. 21 at 3.) He alleges that OCR's file contains evidence that is incorrect and fabricated. *Id.* at 7, 46–47. But, again, the question is whether the CPM allowed discretion, not whether OCR employees abused that discretion. CPM § 301 is entitled "Case Planning." The first sentence of CPM § 301 states "[c]ase planning will begin as early as possible, will be thorough, and will be conducted throughout the life of every case to ensure high quality decisions, prompt investigations and efficient use of OCR resources." There are five "essential elements" of case planning listed in CPM § 301 that "will be addressed in every OCR case and placed in the file (unless inapplicable)." They include the allegations of the complaint, the legal issues, and the investigation strategy. CPM § 301 then states that "[t]he case file will contain documentation that supports the decisions made with respect to each of the applicable essential planning elements." The court reads CPM § 301 to require organization and documentation of the agency's decision-making process. It does not require any particular sort of documentation be included in the case file. It appears to be the sort of general instruction that would help an adjudicator make decisions about what types of documents to obtain or retain. CPM § 301 allows for

choice and judgment. It contains no directives or mandates to keep the file in any specific manner.

Williams alleges throughout his complaint and motion responses that his complaint was not investigated and adjudicated properly and that OCR employees' failures caused him injury. CPM § 303 is entitled "Investigative Determinations: Letters of Finding." It requires OCR to issue a letter at the end of the investigation indicating whether it found sufficient evidence to support the claim. CPM § 303. If a finding of "insufficient evidence" is made, OCR is required to send a letter to the parties including "a statement of the issues raised by the complaint," "a statement of OCR's jurisdiction over the complaint," and "a clear explanation of the pertinent legal standard and factual analysis." *Id.* This section allows wide discretion. It basically requires OCR to write an opinion describing its ruling. Although some direction is given, there are no directives or mandates that would preclude the exercise of discretion. In fact, the last requirement that OCR provide its legal and factual analysis is literally a requirement that OCR describe how it exercised its discretion.

Williams argues that OCR improperly used oral testimony in its determination. He asserts that, under CPM § 602, OCR employees were required to obtain written corroboration for oral testimony. (D.E. 21 ¶ 12.) He also argues that the alleged requirement should extend to written testimony. *Id.* The CPM does not

19

direct employees to take specific actions during the investigation of discrimination complaints. Instead, it explicitly states that investigations "are guided by several fundamental principles" and that the "exact approach . . . will vary from case to case." CPM § 602. The approach may differ depending on "the nature and complexity of the case" and may be "adjusted as necessary to take into account new information obtained during case processing." CPM § 301. This language explicitly requires OCR employees to make choices and judgment calls based on the facts of each specific case they work. CPM § 602 merely lists corroboration of oral statements as a "general practice[] that *should* be part of decision-making during data collection." CPM § 602 (emphasis added). While corroboration may be recommended, it is not mandatory. Suggestions are not the same as specific mandates. *See Aragon v. United States*, 146 F.3d 819, 826 (10th Cir. 1998) (interpreting manual language stating that certain actions "should be" taken in furtherance of the agency's objective as suggestive, not mandatory).

There is no one-size-fits-all way for the investigation or determination of a discrimination complaint. OCR actions taken during the investigation of Williams's 2009 discrimination complaint were made based on the discretion of the employees tasked with the reviewing the evidence. The discretionary function exception bars claims based on this conduct. *See Huff v. Neal*, 555 F. App'x 289, 298 (5th Cir.

20

2014) (explaining that where a statute or policy fails to prescribe a specific course of action, it is within the agency's discretion "to decide how best to fulfill its duty").

### 3. OCR's Adjudication of Williams's September 2010 Appeal of OCR's Investigative Findings and Determination

Williams's main complaint is that it took a long time for OCR to adjudicate his 2009 discrimination complaint. This is where a careful review of the timeline set forth above comes into play. Williams filed his discrimination complaint in September 2009, and it was denied after investigation in April 2010. He appealed in September 2010, and the appeal was denied in February 2013. Williams argues that the denial of his *appeal* was an "administrative closure" of his complaint and that he was never allowed to appeal the administrative closure. In this way, he alleges that his September 2010 appeal of OCR's investigative findings and determination is still somehow pending and seeks to have the court consider various parts of the CPM that have no bearing on this case. The only question is whether the adjudication of his appeal, which was terminated as a final agency action on February 27, 2013, was a discretionary function.

As for timing, the CPM does not provide a specific timeline for adjudication. Instead, CPM § 306 merely states that "[t]he appeal process provides an opportunity for complainants to bring information to OCR's attention that would change OCR's decision" and that a "response to an appeal will be issued as promptly as possible." CPM § 306 does not dictate how the appeal will be considered. It allows evidence

and argument to be submitted and states that a response will be issued. CPM § 306. Neither the timing of the appeal nor the manner of adjudication are mandates. The CPM's instructions are "generalized, precatory, or aspirational language that is too general to prescribe a specific course of action for an agency or employee to follow." *Gonzalez*, 851 F.3d at 545–46 (quoting *Freeman v. United States*, 556 F.3d 326, 338 (5th Cir. 2009)).

Williams also argues that OCR conducted a de novo investigation in violation of CPM § 306. He states that an "Excel spreadsheet attached to [an] email demonstrated that OCR . . . was conducting a de novo investigation." (D.E. 21 ¶ 78.) Again, Williams is complaining that OCR did not follow the manual, not that the manual contained a directive that deprived the agency of discretion. CPM § 306 allows for introduction of new information that "would change OCR's decision" and states that "[t]he appeal process will not be a *de novo* review of OCR's decision." CPM § 306. Williams is confused about the meaning of this section. He seems to think that new evidence may not be considered on appeal, because the appeal is not a de novo review. But CPM § 306 specifically allows the introduction of information that may change the outcome. In any event, the merits of Williams's claim aside, he does not explain how the section of the manual he cites requires a non-discretionary act.

Finally, Williams argues that the February 27, 2013 denial letter was not signed by a person with authority to rule on his appeal. (D.E. 21 at 43–44.) It was signed by another person with permission to sign on behalf of the person who did have authority. (D.E. 23-5 at 7; D.E. 23-8.) Again, whether the signature was properly affixed is not the question. The question is whether the act of adjudicating the appeal was a discretionary function. As discussed, it was.

Williams has failed to demonstrate that any of the actions taken by OCR or its employees were non-discretionary. The court considers the second prong of the analysis.

## B. Second Prong: Whether the judgment was the type the exception was designed to shield

As to the second prong of the test, the agency's decisions must be based on considerations of public policy in order for those decisions to be the type of judgment that the exception was designed to shield. *Berkovitz*, 486 U.S. at 537. "[T]he purpose of the exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Gaubert*, 499 U.S. at 323 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)). When governmental policy allows its agent to exercise discretion, it is presumed that the exercise of that discretion is grounded in policy. *Id.* at 324. To overcome this presumption, a complainant "must allege facts which would support a finding that the challenged actions are not the

kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.* at 324–25. The issue here is whether OCR employees' exercise of discretion is grounded in policy.

This prong is not seriously in dispute here. The Department of Education created the OCR to enforce public policy that disfavors sex and age discrimination in higher education. The CPM was written to carry out that policy. Employees acting pursuant to the CPM are acting in pursuit of strong public policy. They are not carrying out "mundane, administrative, garden-variety housekeeping" functions. *Gibson v. United States*, 809 F.3d 807, 814 (5th Cir. 2016) (quoting *Gotha v. United States*, 115 F.3d 176, 181 (3d Cir. 1997)).

### C. Williams's Constitutional Claims

Williams seeks to get around the discretionary function exception by arguing that OCR's conduct violates his Fifth and Fourteenth Amendment constitutional rights. Williams argues that "Defendant owed a duty of care to follow OCR's Case Processing Manual . . . and afford Plaintiff the constitutional right of Due Process as guaranteed under the Fifth Amendment." (D.E. 21 ¶ 130.) According to Williams, "Defendant breached their duty of care when they administratively closed Plaintiff's appeal without authorization/justification" and "when they administratively closed Plaintiff's appeal without the approval of the Chief Attorney, or the Chief Attorney's designee." *Id.* ¶¶ 132–33. Williams asserts that Defendant also deprived Williams of

"his due process and liberty" because he "was never afforded his absolute right to appeal the administrative closure of OCR Complaint No. 01-09-2073." *Id.* ¶ 134. Williams argues that Defendant's "negligent breach of duty of care . . . resulted in the oppression of a federal constitutional right," namely, the Fifth and the Fourteenth Amendments. (D.E. 26 at 26–27.)

Again, Williams's September 2009 discrimination complaint was not administratively closed. It is also clear that he did appeal the denial of his complaint. Williams asserts that his "appeal would have most likely succeeded as Defendant negligently failed to follow the required mandates/procedures contained within Section(s) 110 & 111 of OCR-CPM." (D.E. 21 ¶ 142.) As discussed, CPM §§ 110 and 111 are irrelevant.

Moreover, the FTCA does not provide a cause of action against the United States for constitutional claims. *F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994). Under the statute, the government's waiver of immunity only applies in circumstances where a private person could also be held liable for the same conduct. 28 U.S.C. § 1346(b)(1); *see Peña Arita v. United States*, 470 F. Supp. 3d 663, 688 (S.D. Tex. 2020) ("Private individuals cannot be liable for constitutional torts, and constitutional tort claims are not actionable under the FTCA."). Williams's constitutional claims are jurisdictionally barred.

## 4. Conclusion

Williams has amended his complaint twice already and the court concludes that further amendment would be futile. Defendant's motion to dismiss (D.E. 22) is GRANTED. The earlier motions to dismiss are denied as moot. (D.E. 8, 16.) The court will issue a separate final judgment.

Signed at Houston, Texas, on March 30, 2021.

Peter Bray
United States Magistrate Judge